# CHARLESTON.

HARRISON vs. LEWIS.

1873.
January
Term.

THOMAS W. HARRISON, CONTESTANT, *against* CHARLES S. LEWIS, RESPONDENT.

Decided January 25th, 1873.

## SYLLABUS.

1. In the case of a contested election, if the contestant gives an additional notice specifying new facts, it must affirmatively appear in the notice that such facts are new, that they were first discovered after the service of the original notice, and that by the use of due diligence they could not have been discovered before the service of the original notice, otherwise the additional notice is defective.

2. Unless the notice and specifications taken together disclose a state of facts which, if proven to be true, would enable a court to determine that the contestant is entitled to the office, or that it is impossible to ascertain the true result of the election, it is insufficient and should, on motion, be quashed.

3. The contestant may of right file a petition at the trial, but not for the purpose or to have the effect of curing defects in the notices and specifications; and in so far as the petition contains new and

88

material allegations, it must be disregarded, or such allegations should be stricken out.

This is a case of a contested election arising under the provisions of the Code of West Virginia, as found in chapter 6, sections 2 to 14 inclusive. These provisions are set out in full in the preceding case of Loomis *vs.* Jackson at page 617, and reference is here made to them.

In pursuance of section 13, aforesaid, the following orders were issued by His Excellency John J. Jacob, Governor of the State of West Virginia:

EXECUTIVE DEPARTMENT,
January 2nd, 1873.

An election having been held by authority of law in the second judicial circuit of this State, on the fourth Thursday in August 1872, for the purpose of choosing a judge of said circuit; and the governor having, by proclamation issued on the fifth day of October 1872, declared that at said election C. S. Lewis was elected to the office of judge of said second judicial circuit; and T. W. Harrison having given notice that he contested the election of said Lewis to said office; and also that he had selected Nathan Goff of the county of Harrison as a member of the "Special Court" to hear and determine the said case of contest; and the said C. S. Lewis having given notice that he had selected as a member of said "Special Court" James Morrow Jr. of the county of Marion, the Governor doth hereby select and appoint Samuel A. Miller, of the county of Kanawha, to be a member of, and to preside over said special court.

And the Governor doth order and direct that the said special court, constituted as aforesaid of the said Samuel A. Miller President, and the said Nathan Goff and James Morris Jr., or any two of them, meet on the sixteenth day of January eighteen hundred and seventy-three at the Capitol in the city of Charleston, and that they, being first duly sworn impartially to decide according to law and the truth upon the petitions, returns

and evidence submitted to them, proceed to hear and determine the contested case aforesaid of T. W. Harrison against C. S. Lewis, and certify their decision therein to the Governor.

And the Governor doth further direct that the said special court certify the number of days each member thereof shall have been engaged in the trial of said case, and the number of miles necessarily travelled by him in coming to and returning from the place of meeting, and that said special court in all respects proceed according to law. For all of which, this shall be their sufficient authority.

The secretary of state is authorized and directed to make out and transmit to each member of said special court a copy of this order.

By the governor: (signed,) JOHN J. JACOB.

(Signed,) JOHN M. PHELPS,
Secretary of State.

EXECUTIVE DEPARTMENT.
January 17th 1873.

It being represented to the Governor that Nathan Goff, who was heretofore selected by the Hon. T. W. Harrison as a member of the special court in the contested election case of said T. W. Harrison against C. S. Lewis, is to unwell to attend the session of said court which assembled on yesterday in the Capitol in the city of Charleston; and the said T. W. Harrison having selected Charles C. Cole as a member of said special court in the place of the said Nathan Goff, the Governor doth direct that the order of the 2nd instant organizing said special court, be so modified and changed as to substitute the name of Charles C. Cole for that of Nathan Goff; and he doth further order and direct that from and after this date, the said special court shall consist of Samuel A. Miller President, James Morrow Jr. and Charles C. Cole, who shall proceed to hear and determine the said contested election case with the same powers as if the

1873.
January
Term.

Harrison
v.
Lewis.

special court had thus originally been constituted. And he doth further order that the secretary of state make out and deliver to said special court, this day a copy of this order.

By the Governor:            (Signed,) JOHN J. JACOB.

    (Signed,) JOHN M. PHELPS,

                        *Secretary of State.*

The case is sufficiently stated in the opinion of James Morrow, Jr. Esq.

*J. H. Brown,* for Contestant.

*J. H. Ferguson* and *W. H. Hogeman,* for Respondent.

MORROW, Judge.

At an election held in pursuance of law on the 22nd day of August 1872, Charles S. Lewis and Thomas W. Harrison were each voted for, for the office of judge of the second judicial circuit; and the certificates of the boards of supervisors of the several counties composing said circuit, showing that Lewis had received a majority of all the votes cast for said office, he was, by proclamation of the governor, declared duly elected.

And within the time prescribed by law, Harrison the contestant gave the Respondent notice in writing, that he would contest the right of the latter "to the certificate of election as judge of the second circuit of West Virginia;" and in said notice set out numerous grounds and specifications of fact upon which he proposed to rely. Service of this notice and specifications was accepted by ths Respondent on the 12th day of October 1872. And on the 18th day of December 1872, the Contestant served an additional notice on Respondent assigning further grounds, and specifying additional facts upon which he would rely to maintain said contest.

It does not, in strictness, appear to the Court whether or not the Respondent served upon the Contestant a return notice as provided for by law; nor is it material to any question here decided.

1873.
January
Term.

Harrison
v.
Lewis.

This contest coming on to be heard before a special court constituted and convened according to law, the Contestant and Respondent appeared in person and by counsel, and the Contestant offered to file his petition accompained by the said notice and additional notice as parts theieof. No objection being made to the filing of the notices, the same were received and ordered to be filed.

But the Respondent, by his counsel, objected to the filing of the petition, on the ground that the notice and additional notice, and each of them, together with the specifications, were insufficient, and moved the Court that the said notices and specifications be quashed.

The Contestant's motion to file his petition and the motion of the Respondent to quash the notices and specifications were discussed together, and may be disposed of at the same time.

The objections to the sufficiency of the notices and specifications divide themselves into two classes, viz:

1st. Such as go to the whole case made by the Contestant upon the face of the notices and specifications, and,

2nd. Such as go to the specifications severally.

There was, however, a distinct objection urged to the additional notice and specifications, which it will be convenient to consider first. This objection was that it does not appear that the matters of fact specified and relied upon in the said additional notice, were unknown to the Contestant at the time the original notice was served upon the Respondent; nor that the said facts could not have been ascertained by the Contestant by the exercise of due diligence, so as to have been embraced in the original notice. According to the case of Loomis *vs.* Jackson this objection is well taken, and on that ground the motion to quash, as to additional notice, should be sustained. The right to serve an additional notice is, by the statute, expressly made contingent upon the discovery of new facts; and it should, therefore, af-

1873.
January
Term.

Harrison
v.
Lewis.

firmatively appear that the facts specified in such additional notice are new facts, discovered after the service of the original notice.

I proceed now to consider the first class of objections above named, viz: those which go to the whole case made and relied upon by the Contestant upon the face of the original notice and specifications.

It does not appear from the Contestant's whole case, as set forth in his said notice and specifications of facts, that the result of the election would be so changed as to overcome the majority of the Respondent; nor that it would be impossible to ascertain and declare the true result, even if every one of the Contestant's allegations, contained in said notice and specifications, were admitted or proven to be true, and if all the errors, irregularities and illegalities complained of, were so corrected as fully to satisfy and remove every specific cause of complaint set forth.

The aggregate number of votes cast in the second judicial circuit for the office of judge thereof, is not set out in Contestant's case; nor is the number of votes set out which were cast for the Contestant, nor the number cast for the Respondent. There is, therefore, no statement of facts before the Court from which it could be seen that if the errors and irregularities complained of were proven, the Contestant would be entitled to the office; nor any such statement of facts as if proven, would make it impossible to declare the true result of the election. The concluding allegation of the specifications does not cure this infirmity. That averment is in these words: "And because I received a majority of the votes cast in the said 2nd judicial circuit for the office of judge thereof." It is plain that this, regarded as a pleading, is merely the statement of a conclusion or result; which, in the nature of the case, depends for its correctness upon facts and figures from which it is deduced; and as these facts and figures do not appear, the Court cannot deter-

mine whether the conclusion is true or false. And it is idle to say that the truth or falsity of this general averment would appear in proof, because under it no proof could be introduced—the averment being wholly insufficient as a specification of any particular fact or facts. If such an averment could be held sufficient as a specification of fact, it would at once dispense with every other specification ; and the parties to every contest like this, would go to trial upon the general allegation of the contestant, on the one hand, that he was legally elected, and, on the other, the denial of that allegation by the respondent.

The rule which requires the contestant to present such facts as that the court may see that the result of the election will be changed if the facts be proven, is a rule which is not only consistent with the principles of pleading, but one which is sustained by the authority of particular cases, well-considered and solemnly adjudicated.

In the case of Loomis *vs.* Jackson, the rule is explicitly laid down, and was acted upon by the Court in that case ; it is also supported by the case of Nickols *vs.* Ragsdale, 28 Ind. 131, and Skerretts case 2 Parsons, (Pennsylvania) 509, reported also in Brightly's Lead. Cases on Elections, 320. In this latter case the court say : "The respondent assumes the position that the court cannot, under a sound and practical construction of the act of assembly, entertain such a petition, unless it contain some precise allegation of fact which, if sustained by proof would be sufficient to vacate the return." And in deciding upon this question the court say : "To induce the court to proceed to the consideration of such a complaint, the facts so set forth should exhibit a case which, if sustained in proof, would render it the duty of the court, either to entirely vacate the election, or to declare that another person, and not the party returned, was duly elected to the office in question."

In the case of Mann *vs.* Cassidy, Brightly's Lead. Cases on Elections, 351, the same rule is declared and

1873.
January
Term.

Harrison
v.
Lewis.

acted upon by the court; and I can see no reason for departing in this case from a rule which seems to me to be in consonance with the general principles of pleading, and to be sanctioned by the weight of judicial opinion. The case of Howard *vs.* Shields 16 Ohio, 184; Brightly's Lead. Cases on Elections, 378, is supposed to establish a different rule, or to relax the rule. But it will be found that the Ohio statute requires of a contestant a less degree of strictness in stating his case, than is required by the 6th chapter of the Code of West Virginia. And moreover, the relaxation of the rule as stated in the case last cited, is rather apparent than real; for the court in that case, whilst deciding that "a notice to contest an election need not set forth facts sufficient to constitute a good case for the contestor," at the same time decided in effect, that no evidence can be admitted unless there be some allegation to which it is applicable ; and that if the case was not stated with reasonable definiteness and certainty, the remedy was by objecting to evidence, and not by motion to dismiss. If, therefore, the Contestant here has omitted allegations material and necessary to show that the result of the election would be changed, or that the election should be vacated, he could not, according to my understanding of the case of Howard *vs.* Shields, be permitted to introduce evidence to prove such material facts, and his case would ultimately fail at the trial. The Court would not have a substructure of facts on which to rest a decision or judgment. I am of opinion, therefore, that the notice and specifications, regarded as a whole, are insufficient, even if it were admitted that all the specifications were set forth with the requisite certainty and particularity. Nor would the result be different, if the additional notice and specifications could be allowed to constitute a part of the Contestant's case. Both the notices, with their specifications taken together, do not disclose a state of facts which, if proven to be true, would enable a court to determine that the Contestant was entitled to the office,

or that it was impossible to ascertain the true result of the election.

It will be most convenient to consider in this connection how far, if at all, the Contestant can now be permitted to amend his case by the introduction of new facts as proposed in his petition now tendered; and which, in addition to several matters not necessary to the present inquiry, contains an allegation of the number of votes certified to have been received by the Contestant and Respondent respectively. It is true this proposition does not come as a proposition to amend; but it is the same in effect whether it be called by one name or by another.

The question is, can facts, new and material to the Contestant's case, be now alleged upon the record, and be regarded by the Court for the purpose of curing any defects which may be inherent in the case made by the Contestant in his notice, or notices, and specifications, which were served upon the Respondent within the time prescribed by law? I think not. The Code, chapter 6, section 13, provides that the case shall be decided "according to law and the truth upon the petition, returns, and evidence to be submitted." In the light of the cases hereinbefore cited, it is sufficiently plain that, notwithstanding the mandatory language of the statute, there must be a sufficient case stated to the court by proper allegations, before evidence will be heard or any trial commenced; and the only question has relation to the time at which the contestant's case must be made, whether it be by petition with notice and specifications served upon the respondent within the time limited by law, as was the case in Loomis and Jackson; or by notice and specifications served, and then a petition filed after the organization of the court, and before the hearing is commenced, as is proposed in this case.

From the language of the statute I am led to the conclusion that the contestant may file his petition before

1873.
January
Term.

Harrison
v.
Lewis.

the hearing is proceeded with, as of right; but however this may be, I find no difficulty in reaching the conclusion that the case must be heard now upon the material averments and specifications made by the Contestant within the time prescribed by law, of which averments and specification of facts notice has been duly served upon the Respondent; and that the Contestant cannot now be permitted to incorporate into his case, by petition or otherwise, any new material fact.

This construction of the statute seems to be required in order to a perfectly fair trial. It is necessary to protect the respondent against surprise; and that cannot be any prejudice to the contestant which requires of him no greater degree of care in the preparation of his case than is required in all judicial proceedings, and no greater than will, in every case, be within his power to exercise.

It is the manifest intent of the statute that a party proposing to contest the election of one who has been declared elected, shall, within a period of time precisely limited, give to him whose election he proposes to contest full information of the case upon which he will proceed to trial. This the contestant does by a notice and specification of the particular facts which constitute his case. And he is expressly authorized to amend his case from time to time, subject to the limitation proscribed, by giving additional notices and specifications. The respondent may, within thirty days from the date of service of contestant's notice, serve a return notice, with specifications upon the contestant; and thus issues of fact are made up, and all the testimony is taken upon these issues, and afterwards a court is organized to try them. As in other judicial controversies, the making up of the issues must precede the taking of testimony; and unless the case made by the contestant, whereof he gives the respondent notice, is such a case as, if proven, would defeat the latter's pretentions to the office, it does not fairly put him to a contest; it does not devolve upon the

respondent any necessity of making defense, and no reason is perceived why he might not disregard such a notice and specifications as insufficient and nugatory, and decline to take testimony, or to otherwise make defense.

To allow any new material allegation of fact at this time would be to permit the party making it to make a new case at the moment of going to trial, to the manifest prejudice of the adverse party ; to place upon the record new issues upon which the other party might desire to take testimony, and which he might have disproven had the opportunity been afforded which it is the design of the statute to secure. I am, therefore, of opinion that although the Contestant may now file his petition as matter of right, yet in so far as it contains new and material allegations it must be disregarded, or such allegations should be striken out.

I consider it immaterial to this question whether the Contestant's case is contained in one or more notices with specifications; or in a petition, notices, and specifications. The parties must proceed to trial, if at all, upon the case of which they have mutually given and received notice according to law, and within the prescribed time. And this I understand to be in perfect accord with the decision in the case of Loomis vs. Jackson. See also Kneass' case, Brightly's Lead. Cas. on Elec. 337.

The notice and specifications being insufficient, for the reason already stated, and material amendments being now inadmissible, the result is that the motion to quash must be sustained, and the petition left thus unsustained by any notice and specification of facts must be dismissed.

The novelty of the questions presented induces me to consider the second class of objections urged in support of the motion to quash, viz : Those objections which go to the sufficiency of the specifications severally.

The grounds of contest and the specifiations of fact constituting the same may be disposed into three classes;

and it will conduce to brevity and precision to so classify them, viz:

1. Those which consist of alleged irregularities committed by the officers of election at the various places of voting, or in ascertaining and certifying the results.

2. Those which consist of challenges to particular votes on account of alleged disqualification of the persons by whom they were cast.

3. Alleged errors in returns, without specifying in what the error consists.

And first. Of the thirty specifications contained in the two notices, no less than twenty-five are referable to the first of the above classes; and twelve of them are identical, except that each relates to a different poll. Each of said twelve is substantially in the following words, the name of the county and township being varied according to the fact, to-wit: "Because the board of supervisors of Wetzel county, improperly conducted and certified as part of the number of votes cast for you in said county those names entered on the poll books of Magnolia township, the said lists of votes not having the number thereof set down in words at the foot of the lists, and then signed by the inspectors and clerks."

The remaining specifications embraced in the class I am now considering, set forth (generally in connection with the foregoing) a variety of irregularities, such as that "it did not appear that the officers conducting the election were sworn;" "that the certificate of the result at said place of voting was not signed by the inspectors thereof, or by the supervisor and one of the inspectors;" "that no certificate of the result was returned by the inspectors, or the supervisor and one of the inspectors;" "that the names entered on the poll books were not counted by the inspectors and clerks in the presence of the supervisors, and the number thereof set down in words at length at the foot of the lists, and signed by the inspectors and clerks conducting the said election after the polls had been closed ; and because the

ballots therein were counted, without the names entered on the poll books having been first counted and the number thereof set down as required by section 59, chapter 3 of the Code."

There is no allegation that by reason of the said irregularities, all of them or any of them, any voter was hindered from exercising the right of suffrage, or that the evidences were rendered doubtful from which the result was to be declared. Cooley on Con. Lim. 617-18. Nor can it be inferred from the nature of the irregularities charged, that the election was not a full, fair and perfect expression of the will of the people of the district. The Contestant does not allege that by reason of these irregularities he was deprived of any vote which he would otherwise have received ; or that the Respondent received any vote which he would not have received, had the irregularities not been committed. They do not therefore vitiate the election, nor require that any poll should be excluded. These irregularities unconnected as they are with any charge that the result of the election was in any degree affected, must be held for naught. Upon this point all the authorities are agreed. People *vs.* Cook, 8 New York, 67; Brightly's Lead. Case on Elections, 423; Boileau's case; Brightly 258; Skerrett's case Id. 320.

Second. The only specification of illegal votes is the thirtieth specification, and is the concluding one in the additional notice. Allusion is here made to this specification only to say, that, although as a specification of illegal votes it is sufficiently certain as to each of the sixteen votes embraced in it, yet being unassisted by any allegation from which the Court could see for itself that the rejection of these votes could change the result of the election so as to overcome the majority of the Respondent, the specification could have availed the Contestant nothing. This conclusion is sufficiently supported by reasons already given and authorities already cited.

Third. Alleged error in returns, without specifying in what such alleged error consists.

Of this class are the first, eighth and twentieth specifications contained in the original notice. They are in these words respectively :

. First specification : "Because the board of supervisors of Wetzel county, returned in its certificate to the governor that you had received in said county twelve hundred and fifty-nine votes, whereas you in fact received but eleven hundred and fifty-nine."

Eighth specification : "And because the board of supervisors of Doddridge county, returned in its certificate to the governor that I had received in said county six hundred and one votes, whereas I in fact received seven hundred and twenty-nine votes."

Twentieth Specification ; "And because the board of supervisors of Taylor county, certified to the governor that you had received in that county nine hundred and twenty-one votes, and I had received nine hundred and twenty ; whereas I received nine hundred and twenty-one, and you nine hundred and twenty." The certainty or particularity with which specifications of this kind should be made, is not defined by the statute. But the manifest intent of the law is that the contest shall be confined to specific grounds constituted of facts particularly and exactly stated ; and that it shall not be of that loose and general character which would place the court in the position of a board of canvassers. It is true that the specifications of fact might be so varied and numerous that an examination of them would be equivalent to a complete canvass of the returns. But no general specification, and no number of general specifications could lead to such a result. It is clear to my mind that a specification, within the meaning of the law, must precisely point out some particular act, fact, or matter, in which some error, mistake, fraud or unfairness of some kind is alleged to exist ; and that a specification which merely alleges error in a general composite result, as, for ex-

ample, that there is error in the result certified by the supervisors of a county, is too general and indefinite to answer the requirement of the statute. The result certified by the supervisors is, in its nature, composite. Its correctness depends, of necessity, upon the correctness of all and each of the antecedent acts and transactions from which the result itself is deduced; and to establish its correctness, or demonstrate its falsity, would obviously require an examination into all such antecedent facts and transactions. Now the very purpose and object of a specification is to point out the particular fact or transaction to which error attaches, and to show what the error is.

It was contended that under the specification relating to the certificate of the supervisors of Wetzel county, only the certificate itself and the certificates of the inspectors of election in that county could be given in evidence; and that the specification, therefore, sufficiently limited the inquiry and the evidence to a particular matter. I do not think so. If the specification be sufficient, it is not easy to perceive how any legal evidence could be rejected, which tended to prove that the matters alleged in it were true; and thus a general inquiry into the election in that county, for the purpose of ascertaining the number of legal votes actually cast therein for the Respondent, would be had upon a single specification.

But suppose the certificate of the supervisors of Wetzel county, and the several certificates of the inspectors of election for the same county, and no more, should be given in evidence, and that the discrepancy of one hundred votes between the result as certified by the supervisors and the aggregate number certified by the several inspectors should appear, what result would follow? The court would have to choose between two conclusions, to-wit: Either that the supervisors had committed an error in casting up the returns which were certified to them by the inspectors, or that in the exercise of their legitimate

1873.
January
Term.

Harrison
v.
Lewis.

powers they had revised and corrected the returns made to them by the inspectors; that the supervisors exercising the functions of a revisory tribunal, had for sufficient cause, disregarded the certificates of the inspectors, and had ascertained the true result by resorting to such other or additional means as are authorized by law. Their powers under the sixty-second section of chapter three of the Code were ample "to ascertain the true result of the said election in their county."

Their duties were not limited to a mere count of the certificates of the inspectors; they had power to examine the poll books and the ballots themselves and to require the testimony of witnesses. Now these things being true, there can be no hesitation as to what a court should do in the case supposed. Without deciding whether the functions of the supervisors were judicial or merely ministerial, any court would, as it seems to me, prefer the conclusion that the certificate of the supervisors was correct; they being a tribunal with powers of review and correction, and with the further and very important power of going behind the certificates of the inspectors, and of examining into the evidences from which those certificates were made up. It would seem unreasonable to say that the court should disregard the certificate of the supervisors, set aside the finding and action of the supervisor revisory tribunal, and adopt the action of the inspectors whose certificate and whole action may fairly be presumed to have been reviewed and corrected.

The very fact that a discrepancy exists between the aggregate vote as certified by the inspectors and the result as certified by the board of supervisors, supports and greatly strengthens the presumption that the supervisors have reviewed and corrected the return; and the discrepancy, therefore, instead of demonstrating the existence of error in the certificate of the supervisors, would be presumed to result from their correction of error.

The same observations will apply to the other two specifications embraced in the class just considered.

. I am therefore of opinion, in any view of those specifications, that they are insufficient.

MILLER, President.

The syllabus of the foregoing opinion of James Morrow, Jr. Esq., presents correctly the points decided in this case. All the members of the court concurred in the first proposition of the syllabus, and Mr. Morrow and myself concurred in the second and third propositions thereof.

The opinion of Mr. Morrow so fully sets out the reasons on which these conclusions were based that I do not deem it necessary to give any additional reasons therefor.

MILLER, President, and MORROW, Judge concurred in deciding to quash the notice and specifications.

COLE, Judge, dissented from the second and third propositions of the syllabus.